1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   EUGENE H. MARTINEZ,                          1:11-cv-01661-DLB (HC)

10                          Petitioner,          ORDER REGARDING RESPONDENT'S
                                                 MOTION TO DISMISS THE PETITION AS
11           v.                                  UNTIMELY

12                                               [Doc. 11]
     A. HEDGPETH,
13
                            Respondent.
14   _____/

15

16          Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28

17   U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction

     of the United States Magistrate Judge.  Local Rule 305(b).
18
19                                         BACKGROUND

20          Petitioner was convicted in the Madera County Superior Court of assault with a deadly

21   weapon and a number of sentencing enhancements were found true.  On August 27, 2007,

     Petitioner was sentenced to a determinate state prison term of fourteen years.
22
23          On December 19, 2008, the California Court of Appeal, Fifth Appellate District, issued

24   its opinion striking the one-year enhancement, ordered the superior court to amend the abstract of

     judgment, and affirmed the judgment in all other respects.
25
26          The California Supreme Court denied review on February 25, 2009.

27          Petitioner did not file any state post-conviction collateral petitions challenging the

28   pertinent judgment.

                                                  1

Petitioner filed the initial federal petition for writ of habeas corpus in the Untied States District Court for the Central District of California on September 2, 2011.  The petition was subsequently transferred to this Court and filed on September 30, 2011.

Respondent filed a motion to dismiss the petition on November 15, 2011.  After receiving an extension of time, Petitioner filed an opposition on January 24, 2012.  Respondent filed a reply on March 7, 2012.

DISCUSSION

I.      Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitations period.  Therefore, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B.      Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118

2

1    S.Ct. 586 (1997).  The instant petition was filed on September 2, 2011, and thus, it is subject to

2    the provisions of the AEDPA.

3        The AEDPA imposes a one year period of limitation on petitioners seeking to file a

4    federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, Section 2244,

5    subdivision (d) reads:

6        (1)  A 1-year period of limitation shall apply to an application for a writ of
         habeas corpus by a person in custody pursuant to the judgment of a State court.
7        The limitation period shall run from the latest of –

8            (A) the date on which the judgment became final by the conclusion of
             direct review or the expiration of the time for seeking such review;
9
10           (B) the date on which the impediment to filing an application created by
             State action in violation of the Constitution or laws of the United States is
11           removed, if the applicant was prevented from filing by such State action;

12           (C) the date on which the constitutional right asserted was initially recognized
             by the Supreme Court, if the right has been newly recognized by the Supreme Court and
             made retroactively applicable to cases on collateral review; or
13
14           (D) the date on which the factual predicate of the claim or claims
             presented could have been discovered through the exercise of due diligence.

15       (2) The time during which a properly filed application for State post-
         conviction or other collateral review with respect to the pertinent judgment or
16       claim is pending shall not be counted toward any period of limitation under this
         subsection.
17

18       In most cases, the limitation period begins running on the date that the petitioner's direct

19   review became final.  Here, the California Supreme Court denied review on February 25, 2009.

20   Thus, direct review became final on May 26, 2009, when the ninety-day period to file a petition

21   for writ of certiorari expired.  Supreme Court rule 13; Bowen v. Roe, 188 F.3d 1157 (9th Cir.

22   1999).  The one year limitations period began on the following day, May 27, 2009, and absent

23   tolling, was set to expire on May 26, 2010.  See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th

24   Cir. 2001) (holding that Rule 6(a) of the Federal Rules of Civil Procedure governs the calculation

25   of statutory tolling applicable to the one year limitations period.)

26   C.    Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

27       Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

28   application for State post-conviction or other collateral review with respect to the pertinent

1  judgment or claim is pending shall not be counted toward" the one year limitation period.  28

2  U.S.C. § 2244(d)(2).  In Carey v. Saffold, the Supreme Court held the statute of limitations is

3  tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled

4  during the intervals between one state court's disposition of a habeas petition and the filing of a

5  habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also

6  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000).

7  Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if

8  the state court explicitly states that the post-conviction petition was timely or was filed within a

9  reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Evans v. Chavis,

10  546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been

11  untimely in state court will not satisfy the requirements for statutory tolling. Id.

12       Because Petitioner did not file any state post-convictions collateral petitions there is no

13  statutory tolling, and the statute of limitations expired on May 26, 2010.  Thus, absent a valid

14  basis for equitable tolling, the instant petition filed in September 2011 is untimely.

15  D.       Equitable Tolling

16       The AEDPA's limitations period is subject to equitable tolling if the petitioner

17  demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

18  circumstance stood in his way." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010); Pace v.

19  DiGuglielmo, 544 U.S. 408, 418 (2005).  Petitioner bears the burden of alleging facts that would

20  give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir. 2002);

21  Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993).

22       Petitioner argues he is entitled to equitable tolling because he suffered from mental

23  impairments during the one-year limitations period that required him to be treated with

24  psychotropic medications.

25       In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit formulated a two-part

26  test to determine whether a petitioner is entitled to equitable tolling based on mental impairment:

27          (1) First, a petitioner must show his mental impairment was an "extraordinary
            circumstance" beyond his control ... by demonstrating the impairment was so
28          severe that either

4

1    (a) petitioner was unable rationally or factually to personally understand the
2    need to timely file, or

3    (b) petitioner's mental state rendered him unable personally to prepare a
     habeas petition and effectuate its filing.

4    (2) Second, the petitioner must show diligence in pursuing the claims to the
5    extent he could understand them, but that the mental impairment made it
     impossible to meet the filing deadline under the totality of the circumstances,
6    including reasonably available access to assistance.

Id. at 1099-1100 (citation and footnote omitted).

7        In relation to the first part of the test, the Ninth Circuit reiterated that "the 'extraordinary

8    circumstance' of mental impairment can cause an untimely habeas petition at different stages in

9    the process of filing by preventing petitioner from understanding the need to file, effectuating a

10   filing on his own, or finding and utilizing assistance to file." Bills, 628 F.3d at 1100.  The

11   petitioner can satisfy this prong by demonstrating the mental impairment is so severe that it

12   prevented him from understanding the need to timely file a habeas petition or to take steps

13   necessary for filing, whether personally or through seeking the assistance of others.  Id. at n.2.

14       The second part involves reviewing the "totality of the circumstances" to determine if the

15   mental impairment was the "but-for cause of any delay."  Id. at 1100.  "The petitioner ... always

16   remains accountable for diligence in pursing his or her rights."  Id.  This Court must "consider

17   whether the circumstances demonstrated the petitioner was otherwise diligent in attempting to

18   comply with the filing requirements."  Id. at 1101.  "[T]he petitioner must diligently seek

19   assistance and exploit whatever assistance is reasonably available."  Id.

20       In support of his claim for equitable tolling, Petitioner submits six mental health

21   documents-two of which are relevant to the one-year limitations period of May 27, 2009 through

22   May 26, 2010.  (ECF. No. 20 at 10-13.)  Petitioner submits a letter from clinical psychologist

23   Artie Wingfield dated January 3, 2012.  The letter indicates that Petitioner has been his patient

24   since January 26, 2010, and was diagnosed with Psychotic DO, NOS.  He also became part of the

25   CCCMS in February 2008.  Petitioner has been prescribed Risperdal and Prozac.  (ECF. No. 20

26   at 10.)  The letter does not provide specific details of Petitioner's mental condition, such as when

27   he was initially diagnosed with a psychotic disorder, when he was initially prescribed the

28

1  medication, what his impairments and limitations include, or how and to what degree the

2  medication affects his cognitive functioning.

3       The second document is a "Mental Health Placement Chrono" dated January 12, 2010.

4  This document indicates that Petitioner meets inclusion in the mental health treatment population

5  and was prescribed psychotropic medication.  (ECF. No. 20 at 12.)  There are four different

6  levels of medical care treatment within the California Department of Corrections and

7  Rehabilitation, the lowest level of treatment being the Correctional Clinical Case Management

8  System (CCCMS).  The CCCMS provides "care, monitoring and follow-up services to inmate-

9  patients whose condition is relatively stable and whose symptoms are largely controlled.  This

10  may include a response to symptoms that require only a brief intervention, such as a

11  psychotherapy session or an adjustment in medications.  While mentally disordered, these

12  inmate-patients can function in the general population and do not require a clinically structured,

13  therapeutic environment."  See California Department of Corrections and Rehabilitation Program

14  Guide Overview, Mental Health Delivery System at

15  http://www.cdcr.ca.gov/DCHCS/docs/Mental Health Program Guide.pdf.  This document does

16  not demonstrate that Petitioner was suffering from a severe mental impairment that made it

17  impossible for him to have filed on his own, or otherwise, a timely application during the one-

18  year limitations period.

19       Petitioner also submits his educational records; however, none of the records he provides

20  pertain to the relevant one-year limitations period and either predate the commencement of the

21  limitations period or postdate its expiration.  (ECF. No. 20 at 14-15.)  Nonetheless, these records

22  do not support Petitioner's claim that he was suffering from a severe mental impairment which

23  prevented him from timely filing on his own or through the help of another.  The May 9, 2011

24  record provides that, although there was a decrease in the testing scores, Petitioner was still

25  functioning at a seventh grade, seventh month reading level and a sixth grade, fifth month

26  language level.  (ECF. No. 20 at 14.)  It has been held that a low educational level, even to the

27  point of illiteracy, does not automatically entitle an inmate to equitable tolling.  Cobas v.

28  Burgess, 306 F.3d 441, 444 (6th Cir. 2002) (inability to understand English not necessarily a

1    basis for equitable tolling);[1] <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir. 1999) (unfamiliarity

2    with the law because of illiteracy not sufficient).  In addition, the test scores were administered

3    on January 4, 2012, after Respondent had already filed a motion to dismiss the instant petition as

4    untimely which raises suspicion as the answers could have been fabricated to result in a declining

5    score that would support his mental incompetence claim.

6          Respondent obtained and submitted a copy of Petitioner's mental health and educational

7    records pertinent to the relevant one-year limitations period.  Respondent submits that although

8    Petitioner reported on a few occasions of hearing a voice late at night, the documents for the

9    period of May 27, 2009, through May 26, 2010, do not support his claim.

10         In May 2009, Petitioner was assessed by a prison psychologist.  The progress notes

11   indicate that Petitioner's cognitive quality, as well as judgment and insight, were found to be

12   within normal limits.  (Lod. Doc. 5 at 1-2.)  Petitioner was not disorganized, confused or

13   suffering from hallucinations or delusions. (<u>Id</u>.  In June 2009, Petitioner reported only of sadness,

14   anxiety and decreased sleep.  (<u>Id</u>. at 3.)  In June and July of 2009, Petitioner's thought process

15   and speech were determined to be within normal limits and there were no signs of delusions or

16   perceptual disturbances.  (<u>Id</u>. at 3-6.)  In August and September of 2009, Petitioner's thought

17   process and content were linear and goal oriented.  Petitioner's judgment and insight remained

18   the same in August and September 2009, and his thought process and content continued to be

19   linear and goal directed.  (<u>Id</u>. at 7-10.)  There was no change in October through December 2009,

20   and in November 2009 Petitioner reported that his sleep was "good."  (<u>Id</u>. at 11-18.)  In January

21   2010, Petitioner indicated that his medication was working and he was able to sleep and his level

22   of insight and judgment remained the same.  More specifically, his fund of information,

23   intellectual functioning, concentration, attention and orientation was found to be within normal

24   limits.  There was no functional impairment.  Petitioner reported that he was going to church and

25   read "the word" in order to stay positive.  (<u>Id</u>. at 19-27.)  Petitioner's mental health remained the

26   same in February and March 2010.  (<u>Id</u>. at 28-31.)  In March 2010, he reported that he was not

27

28          [1] In that case, the Court ultimately found Cobas could speak English based on the evidence in the record.

1    suffering from any side effects from his medication.   (Id. at 31.)  In April 2010, it was noted that

2    Petitioner was not in need of special communication assistance.  (Id. at 32.)  There were no

3    medical records available for the last month of the limitations period, May 2010.  In June 2010,

4    Petitioner reported only that his right hand shook, otherwise his speech was logical, he had full

5    range affect, he was cooperative, oriented, without delusions and his thought process was within

6    normal limits.  Health care professionals were able to achieve effective communication with

7    Petitioner without the need to alter their speech rate or content.  (Id. at 33.)

8         In short, the record does not support that Petitioner suffered from a "severe" mental

9    impairment, both prior to and during the running of the one-year limitations period.  Because

10   Respondent has submitted extensive medical records which all indicate that Petitioner's relevant

11   mental functions were either "good" or "within normal limits," an evidentiary hearing is not

12   warranted.  See e.g. Roberts v. Marshall, 627 F.3d 768 (9th Cir. 2010) (no evidentiary hearing

13   necessary where district court reviewed extensive medical records which showed the petitioner's

14   mental functions were "good" or "within normal limits" and the petitioner managed to file

15   several state post-conviction collateral petitions within the relevant time frame, thus, his mental

16   incompetence was not so "severe" as to cause his untimely filing).

17        Thus, while Petitioner had a mental impairment during the relevant period, there is no

18   evidence that such impairment made him either unable to understand the need to timely file or

19   rendered him unable to prepare or seek assistance to file a habeas petition.  Petitioner's vague

20   assertion about some possible side effects of his medications also fails to establish an

21   extraordinary circumstance.  Petitioner makes reference that his medications could have had a

22   negative impact on the ability of someone taking them to pursue habeas relief, but there is no

23   record to support any negative effect of his medications on his abilities.  See McCall v. Wyoming

24   Attorney General, 339 Fed. Appx. 848, 850, 2009 WL 1803281, at *2 (10th Cir. June 25, 2009)

25   (the mere fact that defendant was under influence of medication insufficient to warrant equitable

26   tolling because he failed to explain how the prescription medication prevented him from bringing

27   his claim.)  In fact, in January 2010, the progress notes indicate Petitioner stated his medication

28   was effective.

1   Even if Petitioner had demonstrated that his mental condition was an "extraordinary

2   circumstance" (which he has not), he has failed to demonstrate diligence such that his condition

3   was the "but-for" cause of his untimeliness.  Petitioner's sole argument regarding his diligence is

4   that he desired to file a habeas petition but was without counsel and he enrolled in a Voluntary

5   Education Program to gain knowledge on how to seek further judicial review.  Petitioner has

6   failed to make any specific allegation as to what he did to pursue his claims.  Nor does Petitioner

7   provide any details about his alleged enrollment in an education program.  Petitioner's mental

8   impairment, alone, is not itself an extraordinary circumstance and does not automatically excuse

9   the petitioner from pursuing his rights diligently. Bills, 628 F.3d at 1100 (petitioner "always

10  remains accountable for diligence in pursuing his or her rights").  Thus, having reviewed the

11  totality of the circumstances, Petitioner has failed to demonstrate that he diligently pursued his

12  claims.  Based on the foregoing, the Court concludes that Petitioner has not met his burden with

13  respect to equitable tolling.  Accordingly, the petition is untimely and Respondent's motion to

14  dismiss must be granted.

15      A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

16  district court's denial of his petition, and an appeal is only allowed in certain circumstances.

17  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining

18  whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

19      (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
        district judge, the final order shall be subject to review, on appeal, by the court
20      of appeals for the circuit in which the proceeding is held.

21      (b) There shall be no right of appeal from a final order in a proceeding to test the
        validity of a warrant to remove to another district or place for commitment or trial
22      a person charged with a criminal offense against the United States, or to test the
        validity of such person's detention pending removal proceedings.
23
        (c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an
24          appeal may not be taken to the court of appeals from–

25          (A) the final order in a habeas corpus proceeding in which the
            detention complained of arises out of process issued by a State
26          court; or

27          (B) the final order in a proceeding under section 2255.

28

9

1      (2) A certificate of appealability may issue under paragraph (1) only if the
2      applicant has made a substantial showing of the denial of a constitutional right.

       (3) The certificate of appealability under paragraph (1) shall indicate which
3      specific issue or issues satisfy the showing required by paragraph (2).

4         If a court denies a petitioner's petition, the court may only issue a certificate of

5      appealability "if jurists of reason could disagree with the district court's resolution of his

6      constitutional claims or that jurists could conclude the issues presented are adequate to deserve

7      encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473,

8      484 (2000).  While the petitioner is not required to prove the merits of his case, he must

9      demonstrate "something more than the absence of frivolity or the existence of mere good faith on

10     his . . . part." Miller-El, 537 U.S. at 338.

11        In the present case, the Court finds that reasonable jurists would not find the Court's

12     determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

13     deserving of encouragement to proceed further.  Petitioner has not made the required substantial

14     showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to

15     issue a certificate of appealability.

16                                          ORDER

17        Based on the foregoing, it is HEREBY ORDERED that:

18        1.  Respondent's motion to dismiss the instant petition for writ of habeas corpus is

19            GRANTED;

20        2.  The instant petition for writ of habeas corpus is DISMISSED with prejudice as

21            untimely; and

22        3.  The Court declines to issue a certificate of appealability.

23     IT IS SO ORDERED.

24     Dated:   **March 29, 2012**              **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE
25

26

27

28